[Cite as *State v. Mock*, 187 Ohio App.3d 599, 2010-Ohio-2747.]


STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| THE STATE OF OHIO, | ) | CASE NO. 08 MA 94 |
| | ) | |
| APPELLEE, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| MOCK, | ) | |
| | ) | |
| APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:   Criminal Appeal from the Court of Common
Pleas of Mahoning County, Ohio
Case No. 07 CR 469


JUDGMENT:   Affirmed in part.
Reversed in part.
Remanded.


APPEARANCES:

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera,
Assistant Prosecuting Attorney, for appellee.

Mark I. Verkhlin, for appellant.


JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: June 9, 2010

WAITE, Judge.

{¶1} Appellant, Billy Mock, appeals his conviction for one count of felonious assault, in violation of R.C. 2903.11(D)(1)(a), a felony of the second degree. Appellant asserts that he received ineffective assistance of counsel because his trial counsel failed to file a motion to dismiss based on the speedy-trial statute. He argues that the trial court committed prejudicial error when selecting one of the jurors. He contends that his conviction is against the manifest weight of the evidence and that his five-year sentence is void because the trial court incorrectly instructed him on the issue of postrelease control. Finally, appellant argues that the trial court failed to consider his present and future ability to pay before imposing a fine of $5,000.

{¶2} Appellant was indicted on April 26, 2007, on two counts of felonious assault. He was arrested on March 27, 2007, and remained in jail on the charges pending in this case until he was sentenced. In count one, appellant was charged with knowingly causing serious physical harm to his girlfriend, Stacy McFarland. In count two, he was charged with knowingly causing serious physical harm to McFarland with a deadly weapon, a fireplace poker. The charges stemmed from attacks that occurred during a five-day period in late March 2007.

{¶3} On May 8, 2007, appellant entered a plea of not guilty to both counts of the indictment and was appointed counsel. The case was set for a jury trial on June 6, 2007. On June 6, 2007, a joint motion to continue the trial date was sustained by the trial court, and the trial was reset for July 18, 2007.

{¶4} On June 29, 2007, the trial court sustained appellant's motion for a transcript of the preliminary hearing to be prepared at the state's expense. The judgment entry did not provide a deadline for the filing of the transcript. On August 13, 2007, the court reporter who was to prepare the transcript filed an invoice in the amount of $195.

{¶5} The trial court conducted a pretrial hearing on November 20, 2007. At the hearing, appellant's trial counsel made an oral motion to continue the hearing, which was sustained in a judgment entry filed November 28, 2007.

{¶6} Appellant concedes in his brief that all of the time that elapsed from November 28, 2007, to the March 28, 2008 trial date resulted from events that tolled the speedy-trial clock. Appellant insists, though, that between August 14, 2007, and November 27, 2007, the speedy-trial clock expired. However, no motion to dismiss the case based on the alleged speedy-trial violation was filed.

{¶7} At trial, McFarland testified that she was held captive by appellant during the five days in question and that she was beaten by him several times. She testified that the doors in appellant's home were barricaded and that she was able to escape only when he opened the front door to get his mail. According to McFarland, she was assisted by neighbors who saw appellant tackle her in the front yard after she fled from the residence.

{¶8} Although police detectives confirmed that several doors in the home were barricaded, McFarland conceded that she and appellant went to H&R Block to file her tax return, picked up take-out food for dinner, and went to a check-cashing

establishment during the period that she was allegedly held captive. McFarland explained that she was not a captive at the beginning of the five-day period and that she could not pinpoint the precise moment when she was no longer able to leave, due to the fact that the five days felt more like one long day.

{¶9}   Appellant's brother, Bobby Joe Mock, who was incarcerated at the time of trial for breaking and entering and theft, and was facing additional criminal charges for burglary, testified at the trial. Bobby Joe admitted that he was present on several occasions at his brother's apartment during the five-day period in question and claimed that it was he who assaulted McFarland. McFarland testified that Bobby Joe refused to help her when he was at the residence, but that he never hit her.

{¶10} Appellant took the stand and denied that he assaulted McFarland. According to appellant, he and McFarland were in the midst of a five-day crack binge when McFarland was assaulted. McFarland denied taking drugs and initially denied that she ever saw appellant take drugs, but later conceded that she had seen appellant smoke marijuana in the past. However, McFarland testified at the preliminary hearing that she knew appellant was addicted to crack cocaine and that she had seen him use it.

{¶11} Despite Bobby Joe's testimony, appellant was convicted on one count of felonious assault. He was acquitted of the felonious-assault charge involving the fireplace poker. Appellant was sentenced on April 25, 2008. This timely appeal followed.

FIRST ASSIGNMENT OF ERROR

**{¶12}** "Defendant-Appellant, Billy Mock was denied effective assistance of counsel pursuant to the test in *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52 [sic], and *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674."

**{¶13}** Appellant asserts that he received ineffective assistance of counsel because his trial counsel failed to file a motion to dismiss based on speedy-trial grounds. To prevail on a claim of ineffective assistance of counsel, appellant must not only show that counsel's performance was deficient, but must also show the resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Deficient performance" means performance falling below an objective standard of reasonable representation. "Prejudice," in this context, means a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 687-688, 694.

**{¶14}** Appellant argues that the speedy-trial clock expired after the invoice of the court reporter was filed, but prior to the continuance granted on November 28, 2007. His argument is based on our decision in *State v. Miller*, 7th Dist. No. 07 MA 215, 2008-Ohio-3085, ¶25, in which we stated, "The record reveals that an invoice for the preliminary hearing transcript was filed on September 11, 2007. Time remained tolled until that date."

**{¶15}** We have consistently held that a defendant's failure to file a motion to dismiss on speedy-trial grounds constitutes a waiver of the issue on appeal. *State v. Turner*, 168 Ohio App.3d 176, 2006-Ohio-3786, 858 N.E.2d 1249, ¶21; *State v.*

*Trummer* (1996), 114 Ohio App.3d 456, 470-471, 683 N.E.2d 392. "Even if an appearance of a violation of R.C. 2945.71 appears on the face of the record, the failure to raise the question of such a violation denies the appellee the opportunity to establish that tolling of the statute occurred." *Turner* at ¶22. Consequently, "[t]he proper approach is the filing of a postconviction-relief petition alleging ineffective assistance of counsel." Id. It is not so apparent to us that a violation occurred, based on the record before us. Therefore, appellant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶16} "The Trial Court committed reversible error when it took a potential juror from the venire instead of using an alternate juror to replace a juror who failed to appear, as is required by Crim.R. 24(G)(1) and R.C. 2945.29."

{¶17} Crim.R. 24(G)(1) reads, "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties."

{¶18} R.C. 2945.29, captioned "Jurors becoming unable to perform duties," reads as follows:

{¶19} "If, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty, the court may order him to be discharged. In that case, if alternate jurors have been selected, one of them shall be designated to take the place of the juror so discharged. If, after all alternate jurors have been made regular jurors, a juror becomes too incapacitated to perform his duty, and has been discharged

by the court, a new juror may be sworn and the trial begin anew, or the jury may be discharged and a new jury then or thereafter impaneled."

{¶20} In this case, the trial court engaged in an unorthodox jury selection process that the trial court itself characterized as "an experiment." Rather than using the prospective jurors' names, each of the prospective jurors was assigned a number. After some introductory comments, the bailiff called 14 prospective juror numbers and asked those individuals to come forward. Then, counsel conducted voir dire of the entire venire.

{¶21} After the completion of voir dire, the state asserted a challenge for cause to prospective juror No. 191. Prospective juror No. 191 stated during voir dire that he had had a "bad experience" with Detective Sergeant Darryl Martin, a Youngstown Police Department detective on the state's witness list. Prospective juror No. 191 explained that he was visiting a friend at his apartment, when Martin arrived and searched the apartment. Martin arrested prospective juror No. 191 for drug possession when he discovered drugs in the apartment.

{¶22} Prospective juror No. 191 explained that the matter was ultimately resolved in his favor, but he agreed with defense counsel that the matter "left a bitter taste in [his] mouth" and that the experience was something that you never "really get over." Prospective juror No. 191 acknowledged that a defendant is innocent until proven guilty and stated that he would take his role as a juror very seriously because he "sat in the seat as a defendant."

**{¶23}** Although the trial court acknowledged that prospective juror No. 191 was "probably more pro-defense," the trial court agreed with defense counsel that prospective juror No. 191 did not say that he could not be fair and impartial. As a consequence, the trial court overruled the state's challenge for cause to prospective juror No. 191.

**{¶24}** Later, as a result of a series of peremptory challenges, prospective juror No. 191 was moved into the alternate-juror position. The state attempted to raise a peremptory challenge to juror No. 191, but the state had already waived its sole alternate-juror challenge on the first alternate juror selected, who was then removed by the defense.

**{¶25}** Prior to administering the oath, the trial court discovered that one of the prospective jurors, prospective juror No. 132, was missing. After some investigation, the bailiff informed the trial court that prospective juror No. 132 had failed to appear that morning.

**{¶26}** In addition, the trial court believed that prospective juror No. 124 had been seated twice. It appears from a review of the transcript that prospective juror No. 103 was originally slotted in the juror No. 7 position when the bailiff called the first 14 prospective jurors, but was then excluded from the panel. There is no way to determine whether prospective juror No. 103 was present in the courtroom, as many of the responses by the prospective jurors are attributed to "prospective juror" rather than the prospective juror's name or number.

{¶27} As a consequence, prospective juror No. 124, originally in the 13th position on the bailiff's initial list, was the first to be moved onto the jury, into the juror No. 8 position (which the trial court referred to as the juror No. 7 position), but due to the omission of prospective juror No. 103 from the final list, prospective juror No. 124 was also in the juror No. 12 position.

{¶28} Rather than seating prospective juror No. 191 on the jury panel, the trial court seated the next two prospective jurors from the venire and then administered the oath. Following the administration of the oath, appellant's trial counsel stated, "Your Honor, I would just suggest that I think it would have in terms of the defense's perspective, it would have been more appropriate to take the alternate and put that person in the seat that was vacated by the lack of the number. That's the only --." The trial court responded, "Seeing who the alternate was and that we were -- I'm sure [the state] would have done it differently had it been his selection. He stays the alternate."

{¶29} The trial court recessed for the day, but the following morning, appellant's trial counsel raised the issue again, stating:

{¶30} "I would like to clarify an objection I was attempting to make, and I don't know if I used the word objection. The court in attempting to rectify a problem yesterday where one of the venile [sic] apparently didn't show up and none of us knew that, so when we came back out from preemptory challenges there ended up being a vacancy in, I think it was in seat number one. The court rather than taking the alternate juror and placing him in the seat of the first position the court took somebody from the entire venire and placed her in the position of as not only an alternate juror but as a juror. The

defense objects to that and believes that it would have been fair and constitutionally sound to take the alternate juror and place him in the position. So the defense asks that that alternate juror be placed in the position to actually hear this case rather than the juror who was placed in that position from the general jury venire."

{¶31} The trial court, realizing that jury selection would be an issue on appeal, provided the following explanation of his jury selection process:

{¶32} "I started a new system where we -- this is basically for the Court of Appeals that where the attorneys interview the whole venire at one time. These juror numbers can make it a little more confusing. This is the first time we've done the whole venire and we were in the chambers doing the strikes and challenges. We went over together and I always ask counsel if I had the right number and the right seat and we all agreed and apparently we missed it. We had one of him [sic] down twice. And there was a problem we had a guy in seat number one who wasn't here because we had gone by the numbers. So at that time we had the alternate already picked. Everybody used the strikes, everybody used their peremptories we were done. So the court I believe was fair since if the glitches hadn't been in there and we knew who we were dealing with each counsel would have had an option to strike these jurors and the alternate and I'm pretty sure it was one of the ones that would have been stricken by the state of Ohio. But that didn't happen because there were two of the state's. So when I went to rectify those I kept the panel we had selected and went to the next in line out of the whole venire panel and put those individuals in the two spots, and juror seat number one and the juror seated I believe is number 10 because number 124 was in seven and

ten. So that's my recollection. The record will reflect it anyway. So I took people from -- I went to the next one past the alternate for seat number one, then again the next one past the alternate for seat number ten to make those replacements because in the court's mind that's what was fair and that's the way it's going to stay."

**{¶33}** This assignment of error raises a novel issue of law, as it appears that no Ohio appellate court has been asked to determine the propriety or effect of seating an alternate juror prior to seating the 11th and 12th jurors in a criminal case.

**{¶34}** The state contends that the trial court did not violate the statute or the criminal rule because they govern the treatment of jurors after the commencement of trial, not prospective jurors prior to the administration of the oath. The state also underscores the fact that the trial court seated the jurors and administered the oath prior to any objection by appellant's trial counsel. Furthermore, the state cites our decision in *State v. Trummer*, 114 Ohio App.3d 456, 683 N.E.2d 392, for the rule that "[t]he correct method for correcting any irregularities prior to the jury being sworn is a motion to dismiss the entire jury panel." Id. at 461.

**{¶35}** However, the *Trummer* court went on to acknowledge that "the selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." Id., citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or

unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶36} First, the state correctly argues that the Ohio statute and criminal rule at issue in this case were not violated, because the jury had not been sworn prior to the trial court's failure to place prospective juror No. 191 in the juror No. 1 position. Second, while the jury-selection process in this case was poorly executed, appellant does not contend that he can demonstrate that he suffered any prejudice based on the record before us. Third, to the extent that appellant might show prejudice based upon evidence outside the record, his second assignment of error, like his first assignment, must be argued in a postconviction action. Accordingly, appellant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶37} "The Trial Court committed reversible error when, after a jury trial, it found Defendant-Appellant, Billy Mock guilty of Felonious Assault in violation of R.C. 2903.11(D)(1)(a) beyond a reasonable doubt, when such conviction was against the manifest weight of the evidence."

{¶38} A weight-of-the-evidence challenge concerns " 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its

effect in inducing belief.' " (Emphasis omitted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1594.

**{¶39}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." *Thompkins* at 387. The court reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses. Id. Additionally, the court determines, " 'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The reversal of a conviction based upon manifest-weight grounds should occur only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

**{¶40}** Moreover, " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown*, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶10, citing *State v. Long* (Feb. 6, 1997), 10th Dist. No. 96APA04-511, 1997 WL 52911. In a manifest-weight analysis, the appellate court must continue to be mindful that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

**{¶41}** The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Cunningham*, 105 Ohio St.3d 197, 2004-

Ohio-7007, 824 N.E.2d 504, at ¶51-57. In the case sub judice, the jury credited the testimony of the victim rather than the testimony of appellant and his brother. Appellant has failed to cite any inconsistencies in the victim's testimony to demonstrate that her testimony was unworthy of credence. Consequently, we must defer to the jury's findings, and appellant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

**{¶42}** "The Trial Court committed reversible error when it incorrectly advised Appellant of the nature of his post release control, when the correct period of post release control is a mandatory period of three years for a felony of the second degree that is not a sex offense pursuant to R.C. 2967.28(B)(2), making Appellant's sentence void."

**{¶43}** The state concedes in its appellate brief and at oral argument in this matter that the trial court erred when it instructed appellant on the matter of postconviction release. Appellant was subject to a mandatory three-year term of postrelease control based on his conviction on a second-degree felony charge. See R.C. 2967.28(B)(2). However, at the sentencing hearing, the trial court stated that appellant would be subject to a mandatory five-year term of postrelease control. Then, in the judgment entry, the trial court, "recommend[ed]" that appellant "be subject to a period of **Post-Release Control (PRC)** of up to **three (3) years** as determined by the Parole Board." (Boldface sic.) Even though the trial court ultimately correctly identified the duration of postrelease control in the judgment entry, the trial court mischaracterized postrelease control as discretionary rather than mandatory.

**{¶44}** R.C. 2929.14(F)(1) governs prison terms.  This section provides that if the trial court imposes a prison term for a felony, the sentence is to include a requirement that the offender is subject to a period of postrelease control after the offender's release from imprisonment.  Additionally, R.C. 2929.19(B)(3) requires that the sentencing court notify the offender that he will be supervised under R.C. 2967.28 after he is released from prison.

**{¶45}** The Supreme Court of Ohio has held that these statutes mandate a trial court to give notice of postrelease control both at the sentencing hearing and by incorporating it into the sentencing entry.  *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶11.  In *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, the Ohio Supreme Court held that "in cases in which a defendant is convicted of, or pleads guilty to, an offense for which postrelease control is required but not properly included in the sentence, the sentence is void, and the state is entitled to a new sentencing hearing to have postrelease control imposed on the defendant unless the defendant has completed his sentence."  Id. at ¶6.

**{¶46}** However, for criminal sentences imposed on or after July 11, 2006, trial courts must apply the corrective procedure set forth in R.C. 2929.191.  *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, paragraph two of the syllabus.  The Ohio Supreme Court's holding in *Singleton* involved its interpretation of two statutes, which were amended pursuant to H.B. 137.  The Ohio legislature characterized H.B. 137 as "an emergency  measure necessary for the immediate preservation of the public peace, health, and safety," which were "crucially needed to

clarify the law to protect the residents of this state from the consequences that might result if the state is forced to release without supervision offenders who have been convicted of serious offenses and imprisoned, solely because the offenders were not provided notice of the fact that the law always requires their supervision upon release from prison."  Id. at ¶27, quoting Section 7 of H.B. 137, L-1971 to L-1972.

{¶47} R.C. 2929.14(F)(1) reads as follows:

{¶48} "If a court imposes a prison term * * * for a felony of the second degree, * * * it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment, in accordance with that division.  If a court imposes a sentence including a prison term of a type described in this division on or after July 11, 2006, the failure of a court to include a post-release control requirement in the sentence pursuant to this division does not negate, limit, or otherwise affect the mandatory period of post-release control that is required for the offender under division (B) of section 2967.28 of the Revised Code."

{¶49} R.C. 2929.191(A) reads as follows:

{¶50} "If, prior to the effective date of this section, a court imposed a sentence including a prison term of a type described in division (B)(3)(c) of section 2929.19 of the Revised Code [first- or second-degree felony]  and failed to notify the offender pursuant to that division that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include a statement to that effect in the judgment of conviction entered on the journal or in the sentence pursuant to division (F)(1) of section 2929.14 of the Revised Code, at any time before the offender is

released from imprisonment under that term and at a hearing conducted in accordance with division (C) of this section, the court may prepare and issue a correction to the judgment of conviction that includes in the judgment of conviction the statement that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison."

**{¶51}** R.C. 2929.191(C) reads:

**{¶52}** "On and after the effective date of this section, a court that wishes to prepare and issue a correction to a judgment of conviction of a type described in division (A)(1) or (B)(1) of this section shall not issue the correction until after the court has conducted a hearing in accordance with this division.  Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction. The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible.  An appearance by video conferencing equipment pursuant to this division has the same force and effect as if the offender were physically present at the hearing.  At the hearing, the offender and the prosecuting attorney may make a statement as to whether the court should issue a correction to the judgment of conviction."

{¶53} In *Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, the Ohio Supreme Court recognized that "[a]lthough [Ohio Supreme Court] caselaw has previously characterized a sentence lacking postrelease control as a nullity, H.B. 137 demonstrates a legislative intent to apply the sentence-correction mechanism of R.C. 2929.191 to sentences imposed after the act's effective date." Id. at ¶27. Thus, even though R.C. 2929.191(A) speaks solely to retroactive application of the statute, that is, to sentences imposed prior to the effective date of the statute, the Ohio Supreme Court has concluded that the statute should be prospectively applied to sentences imposed after July 7, 2006, based upon the express legislative intent of the General Assembly. Id. at ¶31.

{¶54} Therefore, appellant's fourth assignment of error is sustained in part and overruled in part, and this matter is remanded to the trial court to comply with R.C. 2929.191.

FIFTH ASSIGNMENT OF ERROR

{¶55} "The Trial Court committed reversible error when it sentenced Appellant to pay a fine of five-thousand and 00/100 ($5,000.00) without suspending the fine and failing to consider Appellant's ability to pay the fine pursuant to R.C. 2929.19(B)(6)."

{¶56} "A trial court has broad discretion when imposing a financial sanction upon an offender and a reviewing court should not interfere with its decision unless the trial court abused that discretion by failing to consider the statutory sentencing factors." *State v. Weyand*, 7th Dist. No. 07-CO-40, 2008-Ohio-6360, ¶7, citing *State v. Keylor*, 7th Dist. No. 02 MO 12, 2003-Ohio-3491, ¶9. An abuse of discretion connotes more

than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶57} R.C. 2925.11 directs a trial court to impose all mandatory fines specified for a particular crime, unless the court determines that the defendant is indigent. R.C. 2929.18(B)(1) states:

{¶58} "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."

{¶59} Before imposing a financial sanction under R.C. 2929.18, the court must consider the offender's present and future ability to pay the amount of the sanction or fine. See R.C. 2929.19(B)(6). As to the trial court's findings, "there are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record." *State v. Martin* (2000), 140 Ohio App.3d 326, 338, 747 N.E.2d 318.

{¶60} Ohio law does not prohibit a court from imposing a fine on an indigent defendant. *State v. Ramos*, 8th Dist. No. 92357, 2009-Ohio-3064. Nor does the filing of an affidavit of indigency by a defendant automatically entitle a defendant to a waiver of a mandatory fine. *State v. Gipson* (1998), 80 Ohio St.3d 626, 687 N.E.2d 750. Therefore, imposition of the mandatory fine is required unless (1) the offender's affidavit

is filed prior to sentencing and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines. Id. at 634; R.C. 2929.18(B)(1).

{¶61} After the trial court imposed the fine in this case, appellant's trial counsel inquired whether the fine would be suspended due to the fact that appellant is indigent. The trial court answered, "No. You are indigent, you can't pay the fine, then he can't pay the fine. They can't do anything to him for it, but it's still out there. Okay." With the trial court's statement, the hearing was concluded.

{¶62} Appellant did not object to imposition of a fine, and, therefore, he has waived that issue on appeal. *Keylor,* 2003-Ohio-3491, at ¶ 12. Assuming that appellant had not waived the issue, he never filed an affidavit of indigency. The Ohio Supreme Court has held that a fine is mandatory if the defendant does not file such an affidavit prior to sentencing. *Gipson*, 80 Ohio St.3d 626, 687 N.E.2d 750. Finally, a determination that a criminal defendant is indigent for the purposes of receiving counsel does not prohibit the trial court from imposing a fine. *Weyand,* 2008-Ohio-6360, at ¶16 ("the ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the onset of criminal proceedings").

{¶63} Accordingly, appellant's fifth assignment of error is overruled.

{¶64} In summary, appellant's first, second, third, and fifth assignments of error are overruled, and his conviction is affirmed. His fourth assignment of error, based upon the trial court's failure to notify him of postrelease control, is sustained in part and overruled in part. This matter is remanded to the trial court in order to comply with R.C. 2929.191.

Judgment accordingly.

VUKOVICH, P.J., and DONOFRIO, J., concur.

————————————