[Cite as *Cleveland v. Joiner*, 2012-Ohio-3250.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 97434 and 97435**

# CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

# BRENDA JOINER

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case Nos. 2011 CRB 019818 and 2011 CRB 019813

**BEFORE:** Jones, J., Sweeney, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** July 19, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

David M. King
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Victor R. Perez
Chief City Prosecutor
City of Cleveland Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Brenda Joiner, appeals her misdemeanor assault convictions. We affirm.

{¶2} In June 2011, Joiner was charged with two counts of misdemeanor assault in violation of Cleveland Codified Ordinances 621.03, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." The charges were brought in two cases, which were consolidated for trial. A bench trial was had in August 2011, during which the following testimony was elicited.

{¶3} One of the victims, Amber Davenport, lived with her husband and two children in the upstairs portion of a two-family house on School Avenue in Cleveland. Tammy Goodwin lived in the downstairs portion of the house. Goodwin and Brenda Joiner are sisters.

{¶4} On the evening of the incident, June 7, 2011, Davenport arrived home from work sometime between 10:45 p.m. and 11:00 p.m. Her husband and children, ages five and eight, were home. Davenport testified that music was coming from the downstairs portion of the house, her children had their last day of school the following day, and so she went downstairs to ask Goodwin to turn the music down.

{¶5} According to Davenport, she heard Goodwin in the kitchen and went by the back door to talk to her. The two had "words," so Davenport went around to the front of the house where approximately five people were gathered on the front porch. Davenport

testified that she believed the group was drinking alcohol. She requested that they turn their music down. Goodwin's husband apologized and said they would turn the music down. Brenda Joiner, who was on the porch, became belligerent, and "words" were exchanged between her and Davenport.

{¶6} During the course of the "heated" argument, the other victim in the case, Davenport's sister, Mi'Kesha Wilson, arrived at the house. Wilson and Brenda Joiner then started arguing. Eventually, Davenport and Wilson went into the house. Davenport testified that the music was still loudly playing. She further testified that she realized she had left her radio in her van, so she went back outside to get it. Davenport testified the group was still outside and she told Goodwin's husband that she would talk to Goodwin the next day when she had not been drinking. According to Davenport, Joiner, angered by her comment, threw an empty glass beer bottle at her.

{¶7} Davenport testified that her sister, Wilson, then came outside and Joiner threw a bottle at Wilson. The bottle hit Wilson and cut her leg. Davenport called the police. Wilson did not seek medical treatment.

{¶8} Davenport testified that shortly after the second bottle was thrown, a man driving a red Honda Accord pulled up to the house, "jumped" out of the car brandishing a gun and police badge and said that he was a police officer and Davenport and Wilson were going to jail. The man was dressed in civilian clothing, not a police uniform. Davenport identified the man as Brenda Joiner's husband.

{¶9} One of the responding police officers testified that upon arriving at the scene

she was initially met by Brenda Joiner's husband, Anthony Joiner, who informed the police that he was also a police officer. He showed the police officer an East Cleveland police badge. The responding officer testified that she saw what appeared to be two broken beer bottles where the driveway and sidewalk met. The responding officer also saw a small cut that was bleeding on Wilson's knee.

{¶10} The responding officer testified that Brenda Joiner told her that Davenport and Wilson had thrown candy at the group on the porch. Brenda Joiner also told the officer that she had thrown a beer bottle, but not directly at the sisters. The group on the downstairs porch admitted to the officer that they had been drinking. After interviewing the parties, the police officer concluded that Joiner was the "prime suspect" and advised Davenport and Wilson to consult with the city prosecutor. The responding officer also advised the sisters to make a report with the East Cleveland Police Department about Anthony Joiner. It was the officer's opinion that the group gathered on the downstairs porch, including Brenda Joiner, were all intoxicated.

{¶11} The defense presented a case. Anthony Joiner testified that on the evening of the incident Brenda Joiner called him from her sister's house and said that she might need him to come there because "some people * * * [were] creating a conflict." Anthony Joiner went to the house. He testified that he parked his car a "couple houses down," and walked to the house where he was met by a "young lady" who asked who he was. He responded that he was "Officer Joiner," and then proceeded to talk to his wife. He testified that he had a gun on his person, but denied brandishing it. Anthony Joiner

testified that he ignored Davenport and Wilson and just talked to his wife to find out what was going on.

{¶12} One of Brenda Joiner's friends, RoShawn Jackson, who was at the house that evening testified that Brenda Joiner threw a bottle at the ground, but away from where Davenport was standing, and Wilson was not outside at the time. Jackson testified that the group was drinking beer and wine on the porch, but they were not listening to any music.

{¶13} Another one of the guests that evening at Goodwin's house, Terrence Fisher, testified that one bottle was thrown, but he did not see who threw it. According to Fisher, the bottle was not thrown near where Davenport was standing and Wilson was not outside at the time.

{¶14} Brenda Joiner also testified. She explained that she threw a bottle as a "scare tactic, not to hurt anyone, not to injure anyone." According to Brenda Joiner, Wilson was not outside when she threw the bottle.

{¶15} On this testimony, the trial court found Brenda Joiner guilty of both counts of assault. The court sentenced her to 180 days in jail, suspended, imposed a $1,000 fine, with $750 suspended, placed her on one year active probation, and ordered her to attend anger management classes. Brenda Joiner now contends in her sole assignment of error that her conviction was against the manifest weight of the evidence. We disagree.

{¶16} When reviewing a judgment under a criminal manifest weight standard of

review,

> '[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶17} This court's discretionary power to reverse on manifest weight grounds and grant a new trial is exercised only in the exceptional case where the evidence weighs heavily against conviction. *Thompkins* at 387. This standard is a high one because the trier of fact was in a better position to determine credibility issues, by having personally viewed the demeanor, voice inflections, and gestures of the witnesses. *State v. Ali*, 154 Ohio App.3d 493, 2003-Ohio-5150, 797 N.E.2d 1019 , ¶ 36 (7th Dist.); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). A reviewing court therefore should not interfere with the witness credibility and factual determinations of the trier of fact, unless the record demonstrates that a reasonable trier of fact simply could not have found the witness to be credible. *State v. Mock*, 187 Ohio App.3d 599, 2010-Ohio-2747, 933 N.E.2d 270, ¶ 40 (7th Dist.).

{¶18} Brenda Joiner claims that the "conflicting testimony of the City's witnesses as to what happened calls into question whether the evidence provided by the City rises to the level of evidence that should be relied upon to base a finding of guilt beyond a reasonable doubt." She cites two "inconsistencies," which we consider in turn.

{¶19} First, she claims that Davenport testified that her sister, Wilson, had to be treated at a hospital for her cut, which was inconsistent with the testimonies of Wilson and the responding officer. But Davenport did not so testify. Rather, when asked whether her sister had to go to the hospital, Davenport responded, "[n]o."[1] There was no inconsistent testimony by Davenport on this point, therefore.

{¶20} Second, Brenda Joiner contends that there was inconsistency about whether Anthony Joiner brandished a gun because (1) Anthony testified that he did not and (2) the allegation was not in the police report. Initially, we note that whether Anthony Joiner had a gun was irrelevant to the assault charges against Brenda Joiner, which were based on her throwing glass bottles at Davenport and Wilson. But, to the extent that the testimony affected witness credibility, it is important to note that Anthony Joiner was *not* a witness for the city. The city's two witnesses with firsthand knowledge of the altercation, Davenport and Wilson, both testified that Anthony Joiner brandished a gun. Moreover, the responding officer testified that Davenport and Wilson both told her that Anthony Joiner brandished a gun.

{¶21} As to Davenport and Wilson's contention that Anthony Joiner brandished a gun not being in the police report, the responding officer testified that, although she was aware of the allegation, she did not include it in the report because she deemed it irrelevant to the matter on which she was reporting, to-wit: Brenda Joiner's alleged assault on Davenport and Wilson. To that end, she suggested to the victims that they file a

---

[1] *See* tr. 20.

report with the East Cleveland Police Department.

{¶22} In light of the above, the "inconsistencies" cited by Brenda Joiner were not inconsistencies and cannot serve as a basis for a reversal upon the manifest weight of the evidence.

{¶23} Brenda Joiner also contends that her defense witnesses "were in harmony about what happened." She cites their testimonies that there was no music playing and that Davenport was the aggressor in the situation. Whether music was playing was irrelevant. As to Davenport being the aggressor, by Davenport's own admission, she was very angry during the confrontation. But, so was Brenda Joiner, and many of the witnesses testified about the nasty exchange of words between the two. What remains, though, is that during this verbal altercation, Brenda Joiner threw two glass bottles, one at Davenport and the other at Wilson. Although Brenda admitted to only throwing one bottle, both victims testified that two bottles were thrown and the responding officer testified that she saw what she believed to be two broken glass bottles in the driveway. Further, the responding officer testified that Wilson had a cut on her knee and was bleeding.

{¶24} On this testimony, the assault convictions were not against the manifest of the evidence and Brenda Joiner's assignment of error is overruled.

{¶25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

JAMES J. SWEENEY, P.J., and
MARY EILEEN KILBANE, J., CONCUR