[Cite as *Ohio v. Thomason*, 2018-Ohio-1228.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.: 27500 |
| | : | |
| v. | : | T.C. NO.: 16-CR-1621/1 |
| | : | |
| ERICA THOMASON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of March, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER JANS, Atty. Reg. No.84470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 W. Third Street, Fifth Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHARLES SLICER III, Atty. Reg. No. 59927, 426 Patterson Road, Kettering, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Erica Thomason appeals her conviction and sentence

for one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a

felony of the second degree.   Thomason filed a timely notice of appeal with this Court on March 20, 2017.

{¶ 2} The incident which forms the basis for the instant appeal occurred at approximately 5:45 p.m. on May 19, 2016, at the Family Dollar Store located at 440 James H. McGee Boulevard in Dayton, Ohio, when the victim, LaDonna Cook, traveled to the store in order to purchase aluminum foil.   Upon arriving at the store, Cook observed Thomason sitting in a car in the parking lot with her daughter, Dashelle Moon[1], and two other females.   The record establishes that Cook and Thomason had a negative history with each other dating back to November of 2015.   Thomason had threatened physical violence against Cook on at least three prior occasions.

{¶ 3} Upon entering the store, Cook observed Thomason enter the store after her, whereupon Thomason looked around and then walked back outside to the parking lot. Cook testified that after doing this twice, Thomason went outside and stood in front of Cook's parked car.   Cook testified that while she was in the checkout line to purchase the aluminum foil, she was also speaking with a friend on her cellphone regarding Thomason's behavior.   Exie Johnson, the employee who was checking Cook out, overheard the telephone conversation.   After completing the transaction, Johnson informed Cook that she could come and stand behind the register in a secured area where she would be safe from Thomason.

{¶ 4} Cook declined Johnson's offer and instead went to Aisle 21 in the store and called 911 because she feared that Thomason was planning to attack her.   While Cook was speaking with the 911 dispatcher, Moon came into the store, approached Cook, and

---

[1] Moon was Thomason's co-defendant at trial.

stated that Thomason had given her permission to allow Moon to "beat up Cook." Cook testified that she told Moon to leave. After Moon left, Cook testified that she grabbed a hammer from off the shelf so that she could protect herself.

{¶ 5} Shortly thereafter, Moon reentered the store and approached Cook. As Moon approached Cook, Thomason walked around from the other side of the aisle and approached Cook from behind. While Moon recorded the incident with her cellphone, Thomason grabbed Cook from behind and rammed her into a wall. Thomason then forced Cook onto the ground and began dragging her around by her hair. Cook testified that she dropped the hammer during the attack, and Thomason was able to gain control of it. Johnson testified that she observed Thomason repeatedly hit Cook in the back with the hammer while she was laying on the ground. The store manager attempted to break up the fight, and ultimately Moon also helped pull Thomason away from Cook. At trial, the State introduced into evidence the partial recording of the assault retrieved from Moon's cellphone.

{¶ 6} Cook testified that once the attack ended, Thomason and Moon ran out of the store laughing and joking with each other. Thomason and Moon had left the scene by the time that the police arrived. As part of their investigation, the police photographed the injuries suffered by Cook during the attack, including bruising and cuts to the right side of her face, injuries to her arm, and bruising on her back.

{¶ 7} On June 27, 2016, Thomason was indicted for one count of felonious assault with a deadly weapon. At her arraignment on July 7, 2016, Thomason pled not guilty to the charge against her.

{¶ 8} A jury trial was held which began on February 6, 2017, and ended on

February 8, 2017. Thomason was found guilty of felonious assault with a deadly weapon, and the trial court ordered adult probation to prepare a presentence investigation report (PSI). Thereafter on March 14, 2017, the trial court sentenced Thomason to four years in prison.

{¶ 9} It is from this judgment that Thomason now appeals.

{¶ 10} Thomason's first assignment of error is as follows:

{¶ 11} "COUNSEL FOR THE DEFENDANT WAS INEFFECTIVE AS SHE DID NOT ADVISE HER CLIENT OF HER RIGHT TO TESTIFY IN HER OWN DEFENSE. FURTHER, COUNSEL FOR DEFENDANT WAS INEFFECTIVE FOR FAILURE TO MAKE PROPER OBJECTIONS."

{¶ 12} In her first assignment, Thomason contends that the she received ineffective assistance when her counsel failed to advise her that she could testify in her own defense. Thomason further argues that her counsel was ineffective for failing to ask the trial court to instruct the jury to disregard comments made by a State witness, Exie Johnson. Two separate objections to specific portions of her testimony had been sustained. Lastly, Thomason argues that trial counsel was ineffective for failing to request a jury instruction of self-defense.

{¶ 13} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688 [104 S.Ct. 2052]. To reverse a

conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 14} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 15} Initially, we note that the record indicates that Thomason testified on her own behalf at trial. Therefore, Thomason's argument that her trial counsel was ineffective for failing to inform her that she could testify at trial is without merit. Thomason is unable to establish any prejudice even if her assertion is true since she was able to

relate her version of the facts.

## SUSTAINED OBJECTIONS

**{¶ 16}** The first sustained objection that Thomason suggests establishes ineffective assistance by her trial counsel occurred during the following exchange between Johnson and the State:

> The State: *** What was the first thing that kind of caught your attention before the altercation started?

> Johnson: Well, I was ringing up customers at the register and I rung up, I believe her name is LaDonna.   And she had purchased aluminum foil, but she came in and she was just kind of irate and talking on the phone and saying that some people were outside and she knows that they're going to come in and try to fight her.

> Defense Counsel: Objection as to what the other witness may have said, Your Honor.

***

> The State: Your Honor, at this point it's not offered for the truth of the matter [sic] it will explain her conduct.

> The Court: Just approach, please.

(At Sidebar)

> The Court: Is your objection hearsay?

> Defense Counsel: It is.

***

> The State: At this point it's not being offered for the truth but to

explain her conduct, the effect on the –

Defense Counsel: Your Honor, she's talking about people being outside and the facts, presumably threat – alleged threats and so forth are really directed to the contact – the content of this case. I think she can testify as to what tone she was using on the phone.

The Court: Well, the question was what drew your attention. And –

Defense Counsel: As long as she doesn't talk about the content of the phone call I think it's all right.

The Court: Well, but that's – the content is what drew the attention.

The State: Your Honor, I can rephrase. I'll make sure it's abundantly clear that she's not – she has no idea if any of that was true, but it impacted her and she did something as a result of it.

The Court: Very well. I'll sustain subject to rewording.

(End Sidebar)

The State: Exie, so you heard a woman who was at your register having a conversation on the phone. Okay. And without going into what the woman said –

Johnson: Okay.

The State: -- as a result, did you do anything or did you say anything to her?

A: Yes, I asked her if she wanted to come and stand behind the register.

Q: And that would be a secured area?

A: Yes.

Q: And why did you do that?

A: Because of the conversation she was having on the phone, I asked her if she wanted to stand behind the register so she could feel a little more safe.

Tr. 109-111.

{¶ 17} Thomason argues that although her trial counsel's objection to Johnson's testimony was properly sustained, counsel was ineffective for failing to ask the trial court to instruct the jury to disregard the testimony. At the beginning of the trial, the trial court provided the jury with the following opening instruction:

The lawyers present the evidence according to the rules. The judge enforces the rules and determines what evidence may be admitted. From time-to-time objections may be made by counsel. It is the duty of the Court to rule on what evidence is admissible. You must not draw any inferences for or against any party from the questions which the Court does not permit to be answered. Nor should you concern yourselves with the reasons for the ruling by the Court.

Since you do not know the answers to these questions, to speculate on what the answers might have been is tantamount to inventing evidence and being unfair to one of the parties. Further, you must disregard any evidence which the Court orders stricken.

Tr. 90.

{¶ 18} In its instructions to the jury at the close of the trial, the court stated the

following:

> You must not speculate as to why the Court sustained the objection to any question or what the answer to the question might have been. You must not draw any inference or speculate on the truth of any suggestion included in the question that was not answered.

Tr. 328.

{¶ 19} In our view, the testimony offered by Exie Johnson regarding telephone contents arguably constituted hearsay. Furthermore, it is generally accepted that the jury is presumed to follow the instructions of law given to it by the court. *State v. Clark*, 2d Dist. Clark No. 2013 CA 52, 2014-Ohio-855, ¶ 26, citing *State v. Raglin*, 83 Ohio St.3d 253, 264, 699 N.E.2d 482 (1998). Although defense counsel should have asked that the testimony be stricken and the jury instructed to disregard, Thomason cannot establish prejudice. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), syllabus. Defense counsel timely objected to the testimony by Exie Johnson regarding the contents, and the trial court sustained Defendant's objection. The trial court instructed the jury before and after the presentation of evidence regarding the effect of a sustained objection. Thus, an additional curative instruction for the jury to disregard Exie Johnson's hearsay comments would not have changed the outcome of the trial.

{¶ 20} We further note that the contents of Cook's 911 call, which were admitted into evidence without objection, essentially mirror the hearsay testimony provided by Exie Johnson insofar as Cook identified Thomason as being outside the store acting threateningly towards Cook. Therefore, even if the jury had been advised to disregard Exie Johnson's hearsay testimony, Cook's testimony and the 911 call were admitted

which provided essentially the same evidence. Accordingly, we find that Thomason cannot establish that the outcome of the trial would have been any different had the trial court told the jury to disregard Johnson's hearsay statement after sustaining defense counsel's objection.

{¶ 21} The second sustained objection that Thomason suggests establishes ineffective assistance by her trial counsel occurred during the following exchange between Johnson and the State:

> The State: What did you see Ms. Thomason do?
>
> Johnson: She comes in and we have like a centerpiece. It's our register. Then it's a walkway [sic] then it's the centerpiece. And there's also a walkway behind the centerpiece which leads to the other aisles down the center. [Thomason] walks from the back where the aisles are and comes around and just jams Ms. – well, the victim, head straight into our back wall.
>
> Q: I'm going to show again State's [Exhibit] 2 and 3. First State's 2; is this the area where the altercation occurred?
>
> A: Yes.
>
> Q: Okay. Now, you said at some point Ms. Thomason takes the victim's head and smashes it against the wall. Where does that occur? That screen in front –
>
> Defense Counsel: Objection. I don't believe that's an accurate characterization [of] what she just testified to.
>
> The Court: Sustained.

The State: What did you see Ms. Thomason do with the victim?

Johnson: She grabs [Cook] and forces her into the back wall, which is, I believe it's where our headphones are.

The State: Okay.

Tr. 115-116.

{¶ 22} Here, the record establishes that immediately after the trial court sustained defense counsel's objection, the State asked Johnson what she witnessed and she clarified her earlier testimony stating that Thomason forced Cook up against the back wall of the store. Upon review, we conclude that an instruction to the jury to disregard the State's alleged mischaracterization of Johnson's testimony would not have changed the outcome of the trial. Moreover, Exie Johnson initially testified that Thomason "*jam[med] Ms. – well, the victim, head straight into our back wall.*" In our view, the State's comment that Thomason "smashed" Cook's head into the back wall is not a complete mischaracterization of Exie Johnson's testimony. While the word "smashed" is a somewhat stronger language than "jammed," the difference is not so great as to warrant a different trial outcome. Additionally, in light of the abundant evidence adduced at trial establishing Thomason's guilt, the two portions of Exie Johnson's testimony highlighted by Thomason were not so prejudicial as to require a reversal of her conviction. In other words, we conclude that it is unlikely that Thomason would have been acquitted if curative instructions had been given after each objection had been sustained. Therefore, defense counsel's failure to request a curative instruction from the trial court for the jury to disregard Johnson's objectionable testimony did not amount to ineffective assistance.

**Self-Defense Instruction**

{¶ 23} " 'Self-defense is an affirmative defense, which means that the burden of going forward is on the defendant who must prove each element by a preponderance of the evidence.' " *State v. Oates*, 2013-Ohio-2609, 993 N.E.2d 846, ¶ 10 (3d Dist.), quoting *State v. Kimmell*, 3d Dist. Wyandot No. 16-10-06, 2011-Ohio-660, ¶ 19. (Other citations omitted.) "Affirmative defenses such as self-defense ' "do not seek to negate any elements of the offense which the State is required to prove" but rather they "admit[ ] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability." ' " *Id.* at ¶ 10, quoting *State v. Smith*, 3d Dist. Logan No. 8-12-05, 2013-Ohio-746, ¶ 32, quoting *State v. Martin*, 21 Ohio St.3d 91, 94, 488 N.E.2d 166 (1986).

{¶ 24} To establish self-defense, a defendant must introduce evidence showing that: (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief that he was in imminent danger of bodily harm; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997), citing *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990). To support a claim for self-defense, a defendant must demonstrate that he acted out of fear or he felt that his life was threatened. *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 59 (2d Dist.), citing *State v. Crawford*, 2d Dist. Montgomery No. 22314, 2008-Ohio-4008, ¶ 26.

{¶ 25} In the instant case, the evidence adduced at trial established that Cook entered the Family Dollar store after observing Thomason sitting in a car in the parking

lot of the store. Thomason testified that her daughter, Moon, went inside the store to see what Cook was doing. Thomason admitted that Moon came back outside and reported to her that Cook was going to call the police. Thereafter, Thomason twice entered and exited the store in order to observe Cook. Thomason testified that before entering the store a third time, she took off her shoes in preparation for a fight. Thomason was also informed that Cook had armed herself with a hammer per Moon. Thomason acknowledged that at this point she was very angry and unable to calm down. While Cook was inside the store calling 911 and essentially hiding, Thomason did not leave, but rather voluntarily entered the store specifically to attack Cook.

{¶ 26} Whereupon, Thomason entered the store and "rushed" Cook, knocking her into the back wall of the store as can be seen clearly in the video recorded on Moon's cellphone. Thomason then grabbed Cook and forced her to the ground, knocking the hammer out of her hand. Exie Johnson testified that Thomason then picked up the hammer and began hitting Cook in the back with it. Thomason's actions indicate that she was not acting in fear for herself or anyone else, rather she was acting in anger as the aggressor. We also note that Thomason's defense at trial was that she did not hit Cook with the hammer during the attack and could therefore only be convicted of misdemeanor assault.

{¶ 27} Simply put, the evidence adduced during trial did not support the argument that Thomason acted in self-defense, and defense counsel could have reasonably decided that a self-defense instruction was not warranted and would not be given. Thus, defense counsel's decision to not request an instruction on self-defense was tactical in nature and did not amount to ineffective assistance.

{¶ 28} Thomason's first assignment of error is overruled.

{¶ 29} Thomason's second assignment of error is as follows:

{¶ 30} "THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT GUILTY OF FELONIOUS ASSAULT AS SUCH A FINDING IS AGAINST THE MANIFEST AND/OR SUFFICIENT WEIGHT OF THE EVIDENCE AND THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE CONVICTION."

{¶ 31} In her second assignment, Thomason contends that her conviction for felonious assault with a deadly weapon was not supported by sufficient evidence. Specifically, Thomason argues that Cook's injuries were inconsistent with being struck with a hammer. Thomason further argues that the evidence established that she was acting in self-defense, and her conviction is, therefore, against the manifest weight of the evidence.

{¶ 32} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007 CA 99, 2008-Ohio-4636, ¶ 12.

{¶ 33} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

{¶ 34} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 35} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 36} R.C. 2903.11, the felonious assault statute, provides that "[n]o person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). "Deadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶ 37} Here, the State presented evidence that on May 19, 2016, Cook traveled to the Family Dollar store in order to purchase aluminum foil. Upon arriving at the store, Cook observed Thomason sitting in a car in the parking lot with her daughter, Moon, and two other females. Upon entering the store, Cook observed Thomason enter the store, look around, and then walk back outside to the parking lot. Cook testified that after doing this twice, Thomason went outside and stood in front of Cook's parked car. After Cook completed her purchase of the aluminum foil, Exie Johnson, an employee at the store, informed Cook that she could come and stand behind the register in a secured area where she would be safe from Thomason.

{¶ 38} Cook declined Exie Johnson's offer and instead went to Aisle 21 in the store and called 911 because she feared that Thomason was planning to attack her. While Cook was speaking with the 911 dispatcher, Moon came into the store, approached Cook, and stated that Thomason had given permission to Moon to "beat up Cook." Cook testified that she told Moon to leave. After Moon left, Cook testified that she grabbed a hammer from off the shelf so that she could protect herself. It is undisputed that a hammer can be used as a deadly weapon.

{¶ 39} Shortly thereafter, Moon reentered the store and approached Cook. As Moon approached Cook, Thomason walked around from the other side of the aisle and "rushed" Cook from behind. While Moon recorded the incident with her cellphone, Thomason grabbed Cook and rammed her into a wall. Thomason then forced Cook onto the ground and began dragging her around by her hair. Cook testified that she dropped the hammer during the attack, and Thomason was able to gain control of it. Exie Johnson, testified that she observed Thomason hit Cook at least four times in the back

with the hammer while she was laying on the ground. The store manager attempted to break up the fight, and Moon also helped pull Thomason away from Cook. The police photographed the injuries suffered by Cook during the attack, including bruising and cuts to the right side of her face, injuries to her arm, and bruising on her back.

{¶ 40} Here, Thomason argues that Cook's injuries are not consistent with those of a hammer. However, the State was only required to establish that Thomason "[c]ause[ed] or attempt[ed] to cause physical harm to [Cook] *** by means of a deadly weapon." Thomason testified that she picked up the hammer after Cook dropped it. Snapshots taken from the cellphone video recorded by Moon establish that Thomason did, in fact, pick up the hammer while she was attacking Cook. The cellphone video failed to capture the remainder of the assault after Thomason picked up the hammer. Although Thomason denied that she used the hammer during the attack, Exie Johnson testified that she observed Thomason strike Cook on her back at least four times with the hammer.

{¶ 41} Construing the evidence presented in a light most favorable to the State, as we must, we conclude that a rational trier of fact could find all of the essential elements of the crime for which Thomason was indicted and found guilty to have been proven beyond a reasonable doubt. Thomason's conviction for the instant offense is therefore supported by legally sufficient evidence.

{¶ 42} Furthermore, having reviewed the record, we find no merit in Thomason's manifest-weight challenge. It is well-settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. Here the jury quite reasonably could have credited the extensive testimony provided

by the State's witnesses, applied said evidence and all reasonable inferences to the elements of the offense, and thereafter, found Thomason guilty. Whether Thomason used the hammer during her attack on Cook was a question of fact for the jury to decide. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice has occurred.

{¶ 43} Thomason's second assignment of error is overruled.

{¶ 44} Both of Thomason's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies mailed to:

Heather Jans
Charles Slicer III
Hon. Gregory F. Singer