[Cite as *State v.Suzuki*, 2019-Ohio-1131.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

HEATHER LEE SUZUKI,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 2016 MA 0186**

---

Criminal Appeal from the
Youngstown Municipal Court of Mahoning County, Ohio
Case No. 2016 CRB 992

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Atty. Dana Lantz*, Youngstown City Prosecutor, 26 S. Phelps Street,Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty.Christopher Lacich*, Roth, Blair, Roberts, Strasfeld & Lodge, 100 East Federal Street, Suite 600, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated:  March 25, 2019

_____

**D'APOLITO, J.**

**{¶1}**    Appellant Heather Lee Suzuki appeals her conviction following a jury trial in the Youngstown Municipal Court for one count of criminal damaging or endangering in violation of RC. 2909.06(A)(1), a misdemeanor of the second degree. Appellant contends that her trial counsel provided ineffective assistance, there is insufficient evidence in the record to sustain her conviction, and her conviction is not supported by the manifest weight of the evidence. No brief was filed by the state. For the following reasons, we find that Appellant's assignments of error have no merit, and we affirm the judgment entry of the trial court.

Facts and Procedural History

**{¶2}**    In a voluntary statement to the Youngstown Police Department, dated May 2, 2016, Carlos Ramirez, the father of Appellant's then two-and-a-half year old daughter, alleged that Appellant punctured his car tire with a knife and threatened him with a tree branch during a dispute outside of her home in Youngstown, Ohio on April 30, 2016. Based on the allegations in Ramirez's statement, Appellant was charged with one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), and one count of menacing in violation of R.C. 2903.22(A), a misdemeanor of the fourth degree on May 5, 2016.

**{¶3}**    On August 24, 2016, Appellant filed a Notice of Alibi Witness pursuant to Crim.R. 12.1.  Appellant asserted that Nancy Duvall, the grandmother of Appellant's then boyfriend, Arnold Shiplett, had picked her up at 7 a.m. that morning and taken her to Niles, Ohio to help with a yard sale, and that she was not at her home during the time of the alleged incident.  Appellant and Shiplett were married prior to the trial in this case.

**{¶4}**    On October 12, 2016, Appellant's trial counsel filed a motion in limine to prohibit the state or any witness from "introducing, mentioning, and referencing during opening statements, trial and closing arguments any testimony or information pertaining

Case No. 16 MA 0186

to text message conversations between [Appellant] and [Ramirez]," pursuant to Evid.R. 403(B). (10/12/16 Motion). Trial counsel argued that the forty-plus pages of text messages would only serve to confuse the jury. No response to the motion in limine was filed by the state.

{¶5} The case was tried before a jury on October 31, 2016. The state offered the testimony of Ramirez, and Seann Carfolo and Robert Gentile, the two YPD officers who were dispatched to the scene. The defense offered the testimony of Appellant and Duvall. It was undisputed that no custody order was in place.

{¶6} According to Ramirez's testimony, he regularly retrieved his daughter from daycare on Friday afternoons and returned her to Appellant's home on Saturday mornings. On the morning of April 30, 2016, Ramirez planned to confront Appellant because the log book at the daycare center indicated that Shiplett had delivered Ramirez's daughter to daycare the previous day. Ramirez explained that he and Appellant had a verbal agreement that Shiplett would not be alone with their daughter. Ramirez was particularly concerned because Shiplett did not have a valid drivers' license.

{¶7} Ramirez arrived at Appellant's home between 10:00 and 10:30 a.m. that morning. When Appellant answered the door, Ramirez, who was holding their daughter in his arms, confronted Appellant about Shiplett. Appellant instantly became angry and told Ramirez that he needed to "[d]eal with [it]" because she and Shiplett were getting married. (Trial Tr. 81). Ramirez explained at trial that he did not want to hand their daughter to Appellant because he knew she would take the child and shut the door in his face in order to avoid any discussion about Shiplett. As a consequence, he returned to his car, which was parked in Appellant's driveway, in order to put their daughter in her car seat.

{¶8} Appellant immediately began yelling "bring me back my child," and then threatened, "you better bring me my daughter back. I'm going to slash all four of your tires." (*Id.* at 82-83). As Ramirez was buckling the child in the car seat, he noticed Appellant at the front driver's side of his car with a knife. Then, he heard a loud hiss. After securing the child in the car, he walked around to the front driver's side, and Appellant ran into the house. The tire had been punctured on the side wall and was completely flat.

{¶9} Ramirez called the police, then checked on his daughter, who asked him why her mother had a knife. Next, Ramirez called his lawyer. At that point, Appellant emerged from the house and attempted to take Ramirez's mobile telephone. Ramirez held the phone over his head, explaining to Appellant that he had already called the police, and any effort to break his telephone would be fruitless. Appellant was surprised that Ramirez had involved law enforcement and accused him of "ruin[ing her] life." (*Id.* 88).

{¶10} Until the police arrived, Appellant continued to enter and exit the house, yelling at Ramirez and instructing him to leave the premises. Ramirez explained to her that he could not leave because the police had been called, and, further, that he could not drive his car with a flat tire. The final time she exited the house, she retrieved a broken tree branch and ran toward Ramirez and his car, but lost control of the branch and dropped it on the ground. Then she ran back into the house.

{¶11} Ramirez called his parents and asked them to remove their granddaughter from the scene. When the YPD officers arrived, Ramirez explained that Appellant had punctured his tire and threatened him. One of the officers knocked at Appellant's front door but received no answer.

{¶12} Prior to the arrival of the police officers, Ramirez began exchanging texts with Appellant, who stated that she was not home, and then asked him why he was at her house. Ramirez provided the following testimony regarding the text messages:

> At that time when the cops were trying to get her out, [Appellant] – [Appellant] was texting me, telling me that, you know. I'm not home. Why are you at the house and all this other stuff?" I told her, listen come out right now. I won't – you know – I won't press charges; just come out and talk. And she just – refused. And the number – actually, the number that she was texting me from back then, I mean, she had – she was texting -- there was like four or five different numbers she was texting me from. Because we – we have to have some sort of contact to – to pick up [their daughter], and this number, I mean, it wasn't her normal number.

(Tr. 93).

Case No. 16 MA 0186

**{¶13}** On cross examination, Ramirez testified that one of Appellant's neighbors had seen him arguing with Appellant, and that one of the officers went to the house to speak with her. According to Ramirez's testimony, the neighbor said that she saw Ramirez arguing with Appellant, but did not see Appellant damage the tire.

**{¶14}** Officer Carfolo testified that he interviewed Ramirez at the scene and observed a small gash in the driver's side front tire, which was flat. He further observed that Ramirez's daughter was looking around "with tears in her eyes." (*Id.* at 115). Carfolo further observed that Ramirez appeared stressed and his hands were shaking. (*Id.*) Officer Gentile likewise testified that he observed the puncture mark in the tire, and, further, that Ramirez's daughter "seemed kind of upset." (*Id.* at 123).

**{¶15}** According to Officer Carfolo's testimony, he went to Appellant's door and knocked, but received no answer. He believed Appellant was in the house and he did not believe Ramirez had staged the event. Officer Carfolo observed Appellant's car in the driveway, now prevented from exit by Ramirez's vehicle, and also saw a stick laying in the yard.

**{¶16}** At the conclusion of the state's case, Appellant's trial counsel moved for dismissal pursuant to Crim. R. 29. The trial court denied the motion.

**{¶17}** Duvall testified that she had called Appellant a few times and finally reached her at 6:30 a.m. on April 30, 2016. Duvall asked Appellant for her assistance with a yard sale that was scheduled to begin at Duvall's home in Niles at 9:00 a.m. that day. Duvall testified that she picked up Appellant around 7:00 a.m., because Appellant did not have enough gasoline for the round trip to Niles. Oddly, Duvall further testified that they arrived in Niles at "probably ten, ten to 7:00", roughly ten minutes before they left Appellant's house according to Duvall's previous testimony. (*Id.* at 132). The yard sale ended at 6:00 p.m., and Duvall returned Appellant to her home around 7:00 p.m. Duvall testified that she remembered that particular yard sale because it was the first of the season.

**{¶18}** On cross examination, the state asked Duvall if the day in question was a Friday or a Saturday. Duvall responded, "I'm not sure what day it was. Because I – I've had three [yard sales] this summer." She continued, "And I either start on Thursday, Friday, Saturday or I go Friday, Saturday, Sunday, but I never got a three-day one in because it always rained." The state responded, "So your testimony here today is that

[Appellant] helped you on the first day? Duvall answered, "On the very first day of the yard sale, yes." The state continued, "And your testimony is that you always had them start on either Thursday or Friday; correct? Duvall responded, "Yes." (*Id.* at 136-37).

**{¶19}** On redirect, Duvall testified that she was counting the days that it did not rain. She explained, "So it could have been Saturday, Sunday, and Monday. I mean, if – if you look back, every weekend was rain." She nonetheless testified on redirect that she was "not really sure of the days." (*Id.* at 139.)

**{¶20}** Contrary to Ramirez's testimony, Appellant testified that he would send her a text message or they would discuss on the telephone the exact time that he planned to return their child to Appellant's home each Saturday. She testified that they had not discussed a specific time for April 30, 2016, and that she was waiting for a text or call from Ramirez while she was at the yard sale. Then Appellant began receiving odd text messages from Ramirez, so she responded that she was not home. Appellant further testified that she "kind of had an idea of what may have been going on, but it was just odd because [she] wasn't even there." (Tr., p. 145). Appellant believed that Ramirez had staged the scene in order to improve his chances of acquiring sole custody of their daughter.

**{¶21}** The jury convicted Appellant of criminal damaging or endangering but she was acquitted of the menacing charge. At the sentencing hearing on November 28, 2016, Appellant was sentenced to ten days in jail, eighteen months of probation, a fine in the amount of $100.00, restitution in the amount of $99.50, and court costs in the amount of $375.00. Appellant filed the instant appeal and a motion to stay the judgment, which was granted by the trial court.

Analysis

**{¶22}** Appellant advances three assignments of error in this appeal:

<u>Assignment of Error No. 1:</u>

Trial Counsel was Ineffective for Failing to Use at Trial, a Lay Witness and/or an Expert Witness in Cellular Phone Location Technology/Data Interpretation and/or for Filing a Motion in Limine as it Concerned Relevant

Text Message Between Herself and the Alleged Victim and/or for Failing to Introduce Evidence of a Dated Garage Sale Permit**.**

**{¶23}** To prove a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, that is, her performance fell below an objective standard of reasonableness, and that her deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L. Ed.2d 674 (1984). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; but, instead, whether the defense chosen was objectively reasonable. *State v. Thomason,* 109 N.E.3d 729, 2018-Ohio-1228 (2nd Dist.), ¶ 14, citing *Strickland, supra.*

**{¶24}** Appellant contends that her trial counsel was ineffective because: (1) she failed to obtain a lay or expert witness to conclusively establish Appellant's cellular phone location on April 30, 2016; (2) she filed a motion in limine to prohibit the introduction of all of the text messages exchanged between Appellant and Ramirez on April 30, 2016; and (3) she did not offer the garage sale permit into evidence at the trial. However, the cellular phone location information, the text messages, and the garage sale permit are not in the record before us. As a consequence, we cannot determine whether trial counsel's decisions with respect their admission at trial constitute deficient performance, or that Appellant suffered prejudice as a result.

**{¶25}** When the evidence of ineffective assistance of counsel is not in the record, the subject is not available for analysis in the direct appeal. *State v. Holloway*, 7th Dist. No. 17 MA 0048, 2018-Ohio-5393, ¶ 50, citing *State v. Prieto*, 7th Dist. No. 07-MA-4, 2007-Ohio-7204, ¶ 36. As we observed in *Holloway*, in the absence of evidence in the record, any opinion that we might render on the effectiveness of counsel would be conjecture. *Id.* at ¶ 50. Accordingly, based on the record, we cannot conclude that Appellant's trial counsel rendered ineffective assistance, and we find that Appellant's first assignment of error has no merit.

Assignment of Error No. 2:

The Trial Court Erred in Denying the Defendant-Appellant's Criminal Rule 29 Motion and her Conviction Must Be Reversed as a Matter of Law.

Case No. 16 MA 0186

**{¶26}** Crim.R. 29 provides that a court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶27}** R.C. 2909.06, captioned "Criminal damaging or endangering," prohibits a person from knowingly causing or creating a substantial risk of physical harm to any property of another without the other person's consent. R.C. 2909.06(A)(1). Ramirez testified that Appellant punctured his front driver's side tire with a knife during an argument. The YPD officers confirmed that the drivers' side front tire had a puncture, and Officer Carfolo testified that there was a stick in the yard. Finally, Officer Carfolo testified that he did not believe that Ramirez staged the crime scene, and that he believed Appellant was present in the house. Viewing this evidence and all reasonable inferences in the light most favorable to the state, a rational trier of fact could conclude that the essential elements of criminal damaging or endangering had been satisfied beyond a reasonable doubt, and, as a consequence, we find that Appellant's second assignment of error is meritless.

<u>Assignment of Error No. 3:</u>

The Verdict Convicting the Defendant-Appellant was Based on Evidence
That Was Against the Manifest Weight of Evidence and Must be Reversed
as a Matter of Law.

**{¶28}** In determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences

Case No. 16 MA 0186

and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " *Id.* In making our determination, we do not view the evidence in a light most favorable to the prosecution but consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶29} A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* The trier of fact is in a better position to determine credibility issues, because the trier of fact personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Accordingly, we have held that "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe, we must accede to the jury." *State v. Dickson*, 7th Dist. No. 12 CO 50, 2013-Ohio-5293, ¶ 25 (internal quotation marks omitted).

{¶30} A reviewing court should not interfere with witness credibility and factual determinations of the jury unless the record demonstrates that a reasonable juror simply could not have found the witness to be credible. *State v. Bland,* 7th Dist. No. 14 MA 9, 2015-Ohio-1797, ¶ 20, citing *State v. Mock,* 187 Ohio App.3d 599, 2010-Ohio-2747, 933 N.E.2d 270, ¶ 40 (7th Dist.) The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *Mock, supra* at ¶ 41, citing *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶ 51-57.

{¶31} Appellant contends that the record is "devoid of any evidence from the [state] beyond a reasonable doubt, that [Appellant] was in Youngstown, Ohio and that she committed the crime of Criminal Damaging." (Appellant Brf., 9). However, "[c]ircumstantial evidence inherently possesses the same probative value as direct evidence." *State v. Houston,* 7th Dist. No. 17 NO 0455, 2018-Ohio-2788, ¶ 13, citing *State v. Treesh,* 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

{¶32} The evidence offered at trial establishes two conflicting versions of the events that occurred on April 30, 2016. The jurors had the opportunity to hear all of the

witnesses and observe their demeanor. Based on our review of the record, it is reasonable that the jury found the testimony offered by the state to be more credible than the evidence offered by the defense. As a consequence, we cannot conclude that the jury lost its way, or that there are "exceptional circumstances" or evidence in the case that weighs heavily against the conviction. Accordingly, Appellant's third assignment of error has no merit.

## Conclusion

{¶33} Based on the foregoing analysis, we find that Appellant's assignments of error meritless, and we affirm the judgment of the trial court.

Waite, P.J., concurs.

Robb, J., concurs.

---

## Affirmed

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court of Mahoning County, Ohio, is affirmed. Costs are waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**